R. H. RIGSBEE, EXECUTOR, v. W. J. BROGDEN, ADMINISTRATOR.

(Filed 26 February, 1936.)

1. **Life Estates B c: Executors and Administrators D f—Estate of life tenant is liable for taxes assessed prior to his death as preferred claim.**

    A life tenant is liable for taxes assessed against the property during his lifetime, C. S., 7982, and when he dies without paying same they constitute a claim against his estate for taxes assessed previous to his death within the meaning of C. S., 93, and are payable in the third class stipulated by the statute fixing priority of payment of claims against the estate of an insolvent.

2. **Same—Assessments for public improvements assessed prior to death of life tenant do not constitute preferred claim against his estate.**

    Street and sidewalk assessments constitute a lien against the property not collectible out of other properties belonging to the owner, and by provision of statute a life tenant of the property is not liable for the whole assessment, C. S., 2718, but such assessment is to be proportioned between the life tenant and remainderman, C. S., 2720, and upon the death of the life tenant the assessments for public improvements levied against the property prior to his death do not constitute a preference against his estate payable in the third class of priority as a tax assessed on the estate prior to his death. C. S., 93.

3. **Same—Charges for water and gas connections, incurred prior to death of life tenant, do not constitute preferred claim against his estate.**

    Charges for water and gas connections, incurred during the lifetime of a life tenant and unpaid at his death, do not constitute a preferred claim against his estate as taxes assessed on the estate prior to his death, C. S., 93, since in no event would such charges stand upon a higher plane than assessments for permanent improvements. C. S., 2710 (4), 2718.

4. **Same—Tax-sale certificate in the hands of remainderman does not constitute preferred claim against the estate of life tenant.**

    A tax-sale certificate in the hands of a remainderman, representing taxes paid by the remainderman during the lifetime of the life tenant, may not be proved as a preferred claim against the estate of the life tenant, since the remainderman's sole remedy upon the tax-sale certificate is by foreclosure under the provisions of C. S., 8028.

5. **Life Estates B d: Executors and Administrators D d—Proof of life tenant's receipt of proceeds of fire insurance does not alone entitle remainderman to amount thereof from life tenant's estate.**

    A remainderman proving that the life tenant received the proceeds of a fire insurance policy on the property and failed to account therefor prior to his death does not entitle the remainderman to recover the entire amount of the proceeds of the policy from the estate of the life tenant, since the life tenant may have been entitled to part of the proceeds, or may have spent the proceeds of the policy in repairing the damage caused by the fire, and where the remainderman shows receipt of the proceeds of the

policy by the life tenant and failure on the part of the life tenant to account therefor before his death, without more, the remainderman is not entitled to judgment therefor against the estate of the life tenant.

APPEAL by defendant from *Harris, J.,* 10 May, 1935, at Raleigh. From DURHAM.

Civil action to determine liability of decedent's estate for (1) unpaid taxes levied on life estate prior to death of life tenant; (2) street and sidewalk assessments and water and gas connections assessed prior to death of life tenant; (3) tax-sales certificate purchased by plaintiff; (4) insurance collected by life tenant and unaccounted for prior to his death.

The pertinent facts are:

1. That A. M. Rigsbee died in 1922, leaving a last will and testament in which he devised certain real estate in the city of Durham to his son, W. T. Rigsbee, for life, remainder over in the event of the life tenant's death without issue.

2. That W. T. Rigsbee, the life tenant, died without issue, 22 August, 1931, and W. J. Brogden was duly appointed administrator *c. t. a.* of his estate.

3. That during the years 1929, 1930, and 1931 the county and city taxes assessed against said property amounted to $15,170.51, which have not been paid. In addition, plaintiff in his official capacity holds tax-sales certificate for remainder of 1930 and 1931 taxes, amounting to $1,949.68, or $1,502.98.

4. That street and sidewalk assessments and water and gas connections amounting to $549.03 were also assessed against said property during the lifetime of W. T. Rigsbee, which have not been paid.

5. That in March, 1931, the life tenant collected $4,571 from fire insurance policies covering damage to buildings situate on said property, and has never made any accounting therefor to plaintiff as representative of the remaindermen, or otherwise.

6. That the estate of W. T. Rigsbee is insolvent.

7. That since the institution of this action, and pending the appeal, the defendant administrator *c. t. a.* has died, and Sumter C. Brawley, Jr., has been duly appointed in his stead.

Upon these, the facts chiefly pertinent, it was adjudged in the court below:

1. That the taxes levied by the city and county against said property prior to the death of the life tenant, together with the street and sidewalk assessments and charges for water and gas connections, including the tax-sales certificate held by the plaintiff, be paid by the administrator of W. T. Rigsbee's estate as preferred claims in the "Third Class" under C. S., 93.

2. That plaintiff is entitled to participate as a general creditor on account of the insurance funds, amounting to $4,571, collected by the deceased during his lifetime and unaccounted for to plaintiff, or otherwise.

From the judgment thus entered, the defendant appeals, assigning errors.

*Hedrick & Hall and L. P. McLendon for plaintiffs.*

*Brawley & Gantt for Mattie R. Bitting, Sallie Rigsbee, and Mary E. Middleton.*

*Bryant & Jones and Egbert L. Haywood for Zoa L. Haywood and Rosa R. Fulford.*

*Fuller, Reade & Fuller for defendant administrator.*

STACY, C. J. This is an administration suit, brought under C. S., 135, to determine the liability of decedent's estate for the items enumerated in the complaint, and to fix the order or priority of their payment, if liability be found. *Fisher v. Trust Co.,* 138 N. C., 90, 50 S. E., 592.

It is conceded on all hands that with the exception of the homestead rights and the rights of a widow, which generally are superior to the claims of creditors, the debts of a decedent must be paid, if he leave anything with which to pay them, and if his estate be not sufficient to pay his debts in full, then they are to be paid in classes, with those of the last class, if and when reached, sharing ratably in what is left. C. S., 93; *Fertilizer Co. v. Bourne,* 205 N. C., 337, 171 S. E., 368; *Trust Co. v. Lentz,* 196 N. C., 398, 145 S. E., 776; *Murchison v. Williams,* 71 N. C., 135.

Putting aside matters of procedure, we go to a consideration of the questions raised by the appeal:

1. Taxes assessed during the lifetime of a decedent, on land in which he held a life estate, remain unpaid at his death. Are they entitled to preferential payment out of the personalty left by him? In other words, are taxes assessed upon a life estate prior to the death of the life tenant, "taxes assessed on the estate of the deceased previous to his death," within the meaning of C. S., 93, "Third Class"? We agree with the trial court that this question should be answered in the affirmative.

It is provided by C. S., 7982, that "every person shall be liable for the taxes assessed or charged upon the property or estate, real or personal, of which he is tenant for life," etc. It follows, therefore, as the life tenant is liable for the taxes assessed upon his life estate prior to his death, such taxes fall in the "Third Class" under the statute, and are to be regarded as "taxes assessed on the estate of the deceased previous to his death." C. S., 93. Such was the holding in *Coleman v. Coleman,*

5 Redfield Reports (N. Y.), 524, under a like statute and on a similar state of facts.   See, also, *Penn's Executors v. Penn's Executors,* 120 Ky., 557, 87 S. W., 306; *Brodie v. Parsons,* 23 Ky., 833, 64 S. W., 426; *Gates v. Wirth,* 181 Ia., 19, 163 N. W., 215; *Lantz Estate v. McDaniel,* 99 Ind. App., 233, 190 N. E., 130.   This conclusion is likewise supported, in tendency at least, by the decision in *Sherrod v. Dawson,* 154 N. C., 525, 70 S. E., 739.

The fact that the remainderman is given the right of forfeiture and redemption under C. S., 7982, in case the life tenant suffer the land to be sold for taxes, is in recognition of the duty resting upon the life tenant to keep the property free from tax liens, so that it may pass to the remainderman unencumbered by such liens.   *Penn's Executors v. Penn's Executors, supra.*

2. Are street and sidewalk assessments, assessed against the property proir to the death of the life tenant, to be regarded as "taxes assessed on the estate of the deceased previous to his death"?   The law answers this question in the negative.

Such assessments are not taxes levied against the owner, but are charges upon the land, laid with reference to supposed benefits accruing thereto, and if the land benefited be not sufficient in value to pay the assessments in full, the deficiency is not collectible out of other properties belonging to the landowner.   *Carawan v. Barnett,* 197 N. C., 511, 149 S. E., 740; *High Point v. Brown,* 206 N. C., 664, 175 S. E., 169; *Felmet v. Canton,* 177 N. C., 52, 97 S. E., 728; *Canal Co. v. Whitley,* 172 N. C., 100, 90 S. E., 1; 25 R. C. L., 174.

It is provided by C. S., 2718, that assessments for permanent improvements, such as street and sidewalk assessments, duly laid or levied on real estate in the possession or enjoyment of a tenant for life or for years, "which constitute a lien upon such property, . . . shall be paid by the tenant for life or for years, and the remaindermen after the life estate, or the owner in fee after the expiration of tenancy for a term of years, pro rata their respective interests in said real estate"; and further, in C. S., 2720, if such assessments are paid by any one of the interested parties, "the party paying more than his pro rata share . . . shall have the right to maintain an action in the nature of a suit for contribution against the delinquent party . . . and be subrogated to the right of the city . . . to a lien on such property for the same."   Thus, it would seem, the deceased was never liable for the full amount of said assessments, conceding the validity of these statutes for present purposes.   *Raleigh v. Peace,* 110 N. C., 32, 14 S. E., 521.   And even if the plaintiff were in position to maintain an action for contribution and subrogation under the statute, which he is not, still this would not place his claim in the category of "taxes assessed on the

17—209

estate of the deceased previous to his death." *Saluda v. Polk County,*
207 N. C., 180, 176 S. E., 298; *Statesville v. Jenkins,* 199 N. C., 159,
154 S. E., 15.

3. Are charges for water and gas connections, incurred during the life
of the life tenant and unpaid at his death, "taxes assessed on the estate
of the deceased previous to his death"? The answer is, No.

In no event would such charges stand upon a higher plane than assess-
ments for permanent improvements. C. S., 2710 (4); C. S., 2718;
*Justice v. Asheville,* 161 N. C., 62, 76 S. E., 822.

4. Is the tax-sales certificate in the hands of the plaintiff provable as
a preferred claim against the estate of the deceased? The answer is,
No. C. S., 7989 (a), has no application to the facts of this case.

Foreclosure and redemption are the pertinent remedies of the indi-
vidual holder of the certificate and the owner of the land. Foreclosure
by civil action is the "sole right and only remedy to foreclose the same"
afforded the plaintiff under the statute. C. S., 8028; *Wilkes Co. v.
Forester,* 204 N. C., 163, 167 S. E., 691. "The applicable statutes create
a lien for purchasers at tax sales, and also prescribe the procedure for
enforcing said lien. 'Foreclosure' is the process provided for turning
the lien into money." *Logan v. Griffith,* 205 N. C., 580, 172 S. E., 348.
"The courts everywhere are in accord upon the proposition that if a
valid statutory method of determining a disputed question has been
established, such remedy so provided is exclusive and must be first re-
sorted to and in the manner specified therein"—*Bar Association v.
Strickland,* 200 N. C., 630, 158 S. E., 110, quoted with approval in
*Maxwell, Comr., v. Hinsdale,* 207 N. C., 37, 175 S. E., 847.

Nothing was said in *Fertilizer Co. v. Bourne, supra,* which properly
interpreted, militates against our present position. And it is conceded
that an election of remedies would have been open, had the county or
city purchased the certificate. *New Hanover County v. Whiteman,* 190
N. C., 332, 129 S. E., 808; *Shale Prod. Co. v. Cement Co.,* 200 N. C.,
226, 156 S. E., 777; *Wilmington v. Moore,* 170 N. C., 52, 86 S. E., 775.

5. Is plaintiff entitled to prove claim for insurance funds collected
by life tenant on account of fire damage to buildings situate on the
property and unaccounted for to the remaindermen? The answer is,
No.

The failure of the life tenant to render an accounting to plaintiff as
representative of the remaindermen of insurance funds collected on
account of fire damage to buildings situate on the property, without
more, does not render his estate liable therefor. Certainly not for the
whole amount. *Batts v. Sullivan,* 182 N. C., 129, 108 S. E., 511; *King
v. St. Mut. Fire Ins. Co.,* 54 Am. Dec., 683, and note. Compare *Miller
v. Asheville,* 112 N. C., 759, 16 S. E., 762. It is conceded that as life

tenant he rightfully collected said insurance, perhaps was entitled to a portion of it; and *non constat* that he may not have used the same in repairing the damaged buildings. In other words, receipt of such insurance funds by the life tenant, though unaccounted for to remaindermen, does not *ipso facto* import liability against his estate. Something more must be made to appear. *Middleton v. Rigsbee,* 179 N. C., 437, 102 S. E., 780. The facts agreed are too meager to warrant a judgment against the estate for the full amount of said funds. However, as the estate is insolvent and will be consumed in the payment of preferential claims, the question apparently is academic. It has not been debated on brief.

Plaintiff very properly says in his brief: "It is frankly admitted that the administrator would not be chargeable with the sum of $800.00 which was paid out by him in good faith prior to notice of the claims asserted by the plaintiff through the institution of this action, because it has been held in *Mallard v. Patterson,* 108 N. C., 255, that the administrator 'shall not be chargeable for assets he may have disbursed before the commencement of the plaintiff's action when the plaintiff sued on a claim that had not been presented within twelve months from the first publication of notice to creditors."

The result, therefore, is an affirmance in part and a reversal in part of the judgment below. Let the cause be remanded for judgment accordant herewith.

Error and remanded.