VIRGINIA-CAROLINA JOINT STOCK LAND BANK v. W. A. WATT, R. B. PATTERSON, FOURTH CREEK DRAINAGE DISTRICT, AND PEOPLE'S LOAN AND SAVINGS BANK.

(Filed 28 January, 1935.)

1. **Drainage Districts C a—Assessment is not lien against land until due, and judgment against district creates no lien on lands therein.**

The owner of land within a drainage district paid the full amount of assessments levied against the land by the district. Thereafter judgment was obtained by holders of bonds issued by the district, the full amount of the district's bonds not having been liquidated by the district from collections of assessments therein: *Held,* the lands of the owner paying his assessments were not subject to a lien in violation of warranties in his warranty deed, drainage assessments not being a lien upon lands in the district until the assessments are due, and the judgment against the district not being a lien on the lands within the district.

2. **Drainage Districts B c—Lands within district are subject to additional assessments until district's original debt for improvements is paid.**

The owner of land within a drainage district paid the full amount of assessments levied against the land by the district. Thereafter judgment was obtained by holders of bonds issued by the district, the full amount of the district's bond not having been liquidated by the district from collection of assessments therein: *Held,* the land of the owner who had paid his assessments was subject to additional assessments, the lands in the district being liable until the original bond issue for making the improvements or indebtedness incurred therefor is paid in full, C. S., 5352, and the owner was liable for such additional assessments as might be levied against the lands under his contract with a party purchasing the land from him.

**3. Same—**

> N. C. Code, 5373 (g), *is held* not to affect the liability of lands within a drainage district for additional assessments necessary to pay a judgment against the district rendered prior to the effective date of the statute for improvements theretofore made by the district.

CIVIL ACTION, before *Harding, J.,* at June Term, 1934, of IREDELL.

The rights of the parties were submitted to the trial judge upon an agreed statement of facts and a contract between the parties made a part thereof. The chronology of facts is substantially as follows:

1. The Fourth Creek Drainage District was properly and legally organized by a final judgment on 15 May, 1911, and the drainage work was completed prior to 22 January, 1915. Seventy-five and seven-tenths acres of land in controversy lies within the boundaries of the district.

2. On 1 January, 1913, bonds were issued by the district in the sum of $25,000. These bonds were placed as collateral to a note given by the district for money borrowed from the First National Bank, which said note was renewed from time to time and as assessments were collected the principal was reduced.

3. That Dr. W. W. Wilhelm owned the land in controversy, and on 28 February, 1917, duly paid the sum of $1,896.96 to the proper officers of the drainage district, "which represented this particular land's full and complete proportionate part of the indebtedness, including the expense and cost of the Fourth District Drainage District."

4. The plaintiff Land Bank, for the sum of $4,800, and in pursuance of such agreement, executed and delivered to said defendants a deed with full covenants and warranties, conveying said property. In examining the title to the property, counsel for Watt and Patterson discovered that a portion of the land, to wit, 75.7 acres, lay within the boundaries of the drainage district, and that the People's Loan and Savings Bank had secured judgment against said district amounting to $7,248.66, which judgment was duly docketed. The amount of the judgment represented the balance due on the bond issue hereinbefore mentioned.

5. The original assessment was made against the land within the district about 1915, and no further assessment has been made or levied against the property for any purpose, and "that all assessments which have ever been levied or made against this property, . . . due and payable to the Fourth Creek Drainage District for the payment of cost and expense of improvements have been fully paid and satisfied."

6. Watt and Patterson refused to accept the deed, and the parties entered into a written contract. This contract was made on 28 October, 1933, by and between Watt and Patterson and the Virginia-Carolina Joint Stock Land Bank. This instrument recites the judgment of the People's Loan and Savings Bank against the drainage district, and fur-

ther, that "the parties of the first part (Watt and Patterson) contend that the lands hereinbefore mentioned are located within the boundaries of said district, and are liable for certain assessments which should be made to provide for payment of the indebtedness of said district, and the said Virginia-Carolina Joint Stock Land Bank contends that the said land is not within the boundaries of said district, and is not liable for any assessment, or for the indebtedness of any drainage district."

It was further recited that the Land Bank had deposited the sum of $559.68 with the clerk of the Superior Court upon the following conditions:

(a) "The Land Bank  . . .  shall, within 60 days,  . . .  institute legal action for the purpose of having determined whether there is any liability against the land hereinbefore referred to on account of any drainage assessment or indebtedness due by the Fourth Creek Drainage District, if there is such a district in existence."

(b) "That the clerk,  . . .  after the determination of liability of the  . . .  Land Bank under the warranties contained in its deed . . .  on account of any liability, if such exists, shall, if it is finally judicially determined that the said land is liable, pay over to the parties of the first part (Watt and Patterson) the said sum of $559.68.  . . . If it is finally judicially determined that there is no liability, as hereinbefore recited,  . . .  then the  . . .  clerk shall pay over to the . . .  Land Bank the amount of $559.68 deposited under this agreement."

(c) "In the event that liability is established, but the same does not amount to the total of deposits hereunder made, then the clerk shall pay to the parties of the first part (Watt and Patterson) the amount of liability, and any amount remaining shall be paid by him to the  . . . Land Bank."

Within the time specified in the agreements between the parties the Land Bank instituted this action.  The defendants Watt and Patterson filed a motion praying that the drainage district and the People's Loan and Savings Bank, the judgment creditor, be made parties.

The question was heard by the trial judge, who was of the opinion, and so adjudged, that the judgment against the drainage district "constitutes an encumbrance against the property in question in contemplation of the warranties contained in the Land Bank deed to W. A. Watt and R. B. Patterson,  . . .  and the simultaneous contract entered into by the Land Bank and W. A. Watt and R. B. Patterson, dated 28 October, 1933."  It was further adjudged that the defendants Watt and Patterson were entitled to the possession of the sum of $559.68 held in escrow by the clerk of the Superior Court under the agreement here-

inbefore mentioned. The trial judge also approved the order of the clerk making the drainage district and judgment creditor parties to the action.

From judgment so rendered the plaintiff Land Bank appealed.

*W. A. Worth and C. H. Dearman for plaintiff.*
*Scott & Collier for Watt and Patterson.*
*P. P. Dulin for Fourth Creek Drainage District and People's Loan and Savings Bank.*

BROGDEN, J. The decisive questions of law are:

1. Does the judgment of the People's Loan and Savings Bank against the Fourth Creek Drainage District constitute a lien or encumbrance upon that portion of the land within the district and within the contemplation of the warranty clause in the deed?

2. Is the land liable or subject to further assessment?

Drainage assessments are "charges" attaching to the land as they fall due from time to time, and follow the land until all have been liquidated. They are not liens upon land until levied and due. Hence, unmatured drainage assessments are not within the boundaries of a warranty clause of a deed duly executed and delivered by the owner of land within such district to a purchaser. *Pate v. Banks,* 178 N. C., 139, 100 S. E., 251; *Branch v. Saunders,* 195 N. C., 176, 141 S. E., 583; *Carawan v. Barnett,* 197 N. C., 511, 149 S. E., 740. Nor would a judgment against a municipal corporation constitute a lien upon the real estate of an owner of land within the boundary or geographical area of such corporation.

The foregoing authorities answer the first question of law "No."

The statutes covering assessments and bond issues for drainage districts are C. S., 5351 to 5374. C. S., 5352, provides, in part: "Any landowner in the district not wanting to pay interest on the bonds may, within fifteen days after the publication of such notice, pay to the county treasurer the full amount for which his land is liable, to be ascertained from the classification sheet and certificate of the board showing the total cost of the improvement, and have his lands released from liability to be assessed for the improvement; but such land shall continue liable for any future assessment for maintenance or for any increased assessment authorized under the law." It is obvious that the drainage statutes impose liability upon the land within the district until the original bond issue for making the improvements or indebtedness incurred therefor has been paid.

The contract between the parties undertakes to provide for such liability accruing in the future, and it seems to be the intent of the agree-

ment, as construed by the court, to safeguard the purchaser against such liability arising on a reassessment of the land as provided by statute. Therefore, the Court is of the opinion that the land within the district remains liable for the indebtedness originally created for making the improvement, and that the Land Bank, by virtue of the terms of the contract, has deposited with the clerk of the Superior Court the specified sum of money to cover such liability.

The Land Bank relies upon C. S., 5373 (g). However, this act was passed in 1933, and is not deemed to affect the rights of the parties as disclosed by the record in the present case.

Affirmed.